UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUCY ROCHES-BOWMAN,

                                        Plaintiff,

        v.

THE CITY OF MOUNT VERNON *and*
ARISTOTLE EVANS,

                                        Defendants.

No. 21-CV-5572 (KMK)

OPINION & ORDER

Appearances:

Eric Sanders, Esq.
The Sanders Firm, P.C.
New York, NY
*Counsel for Plaintiff*

William Otis Wagstaff, III, Esq.
The Wagstaff Firm, P.C.
White Plains, NY
*Counsel for Defendant City of Mount Vernon*

Lucas B. Franken, Esq.
Lambros Y. Lambrou, Esq.
The Lambrou Law Firm
New York, NY
*Counsel for Defendant Evans*

KENNETH M. KARAS, District Judge:

        Lucy Roches-Bowman ("Plaintiff") brings this lawsuit, pursuant to 42 U.S.C. § 1983, 42

U.S.C. § 2000e (Title VII of the Civil Rights Act of 1964 or "Title VII"), the New York City

Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, and New York Civil Practice Law and

Rules ("NYCPLR") § 213-c, against the City of Mount Vernon (the "City") and Aristotle Evans

("Evans"; collectively, "Defendants"), alleging gender discrimination, hostile work environment,

and sexual abuse.  (*See generally* Compl. (Dkt. No. 1).)  The City filed a Motion To Dismiss the Complaint against the City in its entirety, (*see* City's Not. of Mot. (Dkt. 27)), and Evans filed a Motion To Dismiss two out of the four counts Plaintiff alleges against Evans in the Complaint, (*see* Evans' Not. of Mot. (Dkt. No. 26)).  For the following reasons, the Motions are granted.

## I. Background

### A.  Factual Background

Unless otherwise stated, the following facts are drawn from Plaintiff's Complaint and are assumed to be true for the purpose of resolving the instant Motions. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

At all relevant times, Plaintiff was employed with the City of Mount Vernon Police Department (the "Police Department").  (*See* Compl. ¶¶ 7–8, 49.)  Evans was a Sergeant employed with the Police Department.  (*Id.* ¶ 9.)

On September 29, 2018, Plaintiff was on duty at an apartment "handling the processing of a deceased person" when Evans, her direct supervisor at the time, arrived at the apartment. (*Id.* ¶ 21.)  Plaintiff alleges that while at the apartment, Evans "told her that she was sexy and that he wanted to touch her."  (*Id.* ¶ 22.)  Plaintiff then alleges that "a short time later," Evans "forcibly groped her buttocks, rubbed her vaginal area, and attempted to kiss her."  (*Id.* ¶ 23.) Plaintiff alleges that she told Evans to stop, but he ignored her and soon after he "tried to pull her into the apartment to have sexual intercourse with her while the deceased person laid on the floor."  (*Id.* ¶¶ 24, 25.)  Plaintiff alleges that she again asked Evans to stop, but a short time after, while they were leaving the apartment, "he pulled her into the stairwell and pinned her against the wall, forcibly kissing her."  (*Id.* ¶¶ 26, 27.)  She alleges Evans then unzipped his pants,

"pulled out his penis, grabbed [Plaintiff's] right hand and forced her to move her hand up and down on his penis," and "a short time later [Evans] ejaculated into her right hand." (*Id.* ¶¶ 28, 31.)  During this encounter, Plaintiff alleges "she was afraid" and she "experienced pain in her right hand." (*Id.* ¶¶ 29, 30.)  Plaintiff alleges that she wiped her right hand on her duty trousers and took a picture of the stained trousers "as evidence of the forced sexual act." (*Id.* ¶ 32.) Plaintiff further alleges that, a short time after the incident, Evans texted her stating, "that was amazing." (*Id.* ¶ 33.)

Plaintiff stated that although "she felt traumatized" by the incident, she did not immediately tell anybody about what had occurred because she believed the City and the Police Department would not take her sexual harassment allegation seriously given "how [the City and the Police Department] handled similarly situated incidents" in the past. (*Id.* ¶ 34.)  However, on October 1, 2018, Plaintiff contacted Jean Jerome, the Vice President of the Mount Vernon Police Association to inform him of the incident and "he advised her to file a complaint." (*Id.* ¶ 36.) On October 4, 2018, Brent Gramble, the Mount Vernon Police Association President, referred Plaintiff to Human Resources to file a sexual harassment complaint against Evans. (*Id.* ¶ 37.) On November 7, 2018, Plaintiff alleges that she filed a request to have the sexual assault "considered a Line of Duty under GML 207-c which would entitle her to enhanced payment of salary, wages, medical[,] and hospital expenses incurred in the performance of duties." (*Id.* ¶ 38.)  Plaintiff also alleges that on December 26, 2018, she filed a Notice of Claim with the City "regarding its failure to supervise [Evans], negligently hiring him, and for the foreseeable harassment and sexual assault perpetrated upon her."[1] (*Id.* ¶ 39.)

---

[1] Plaintiff alleges that "after several months without pay," on April 19, 2019, the City informed her that it did not have Plaintiff's Line of Duty request or her Notice of Claim. (*Id.*

On February 1, 2019, Plaintiff "met with Assistant District Attorneys Kerry Williams and Jennifer Sculco," where she was informed that the "Office of the District Attorney [would] not [be] pursu[ing] criminal charges against [Evans] because police officers are 'held to a higher standard.'" (*Id.* ¶ 40.)  They also informed Plaintiff that her credibility would be attacked because, among other things, she "did not seem to be in distress" and had committed certain acts, such as "mov[ing] her hand to perform the masturbation," voluntarily.  (*Id.*)  Plaintiff stated that this interaction made her feel "defeated because [the Assistant District Attorneys] did not take her complaint … seriously," and that they "engaged in the same sort of gender stereotyping and value judgments that creates and maintains the opportunity for persons such as [Evans] to violate a woman's rights at the workplace." (*Id.* ¶ 41.)

On April 19, 2019, Plaintiff was allegedly told that the City did not have her Notice of Claim or her request to have the sexual assault considered a Line of Duty under GML 207-c.  (*Id.* ¶ 44.)  On October 29, 2019, Plaintiff, along with counsel, met with the Internal Affairs office of the Police Department regarding her allegations against Evans.  (*Id.* ¶ 45.)  Plaintiff also alleges that she filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") on December 12, 2019, which was assigned the complaint number 520-2020-01522.  (*Id.* ¶ 3.) On April 17, 2020, the Police Department "posted Personnel Order No.: 20-28," which contained the details of a discipline settlement with Evans.  (*Id.* ¶ 46.)  In this agreement, Evans "agreed to a demotion [from Sergeant] to the civil service rank of Police Officer" but remained employed by the Police Department.  (*Id.* ¶¶ 46, 47.)

---

¶ 44.)  However, on March 29, 2021, the City granted Plaintiff's application for Line of Duty benefits.  (*Id.* ¶ 49.)

4

Plaintiff brings eight causes of action: (1) gender discrimination and (2) hostile work environment under Title VII against the City; (3) gender discrimination and (4) hostile work environment under 42 U.S.C. § 1983 against Evans; (5) a *Monell* claim under 42 U.S.C. § 1983 against the City; (6) gender discrimination and (7) hostile work environment under N.Y. Exec. Law § 296 against both Defendants; and (8) sexual abuse under N.Y.C.P.L.R. § 213-c against both Defendants. (*Id.* ¶¶ 50–89.) Plaintiff claims that as a result of Defendants' actions, she is "still recovering from the sexual violence and mental abuse she endured as a police officer." (*Id.* ¶ 49.) Plaintiff seeks compensatory and punitive damages, as well as any available statutory remedies and interests and costs. (*Id.* at Prayer for Relief.)

B. Procedural History

Plaintiff filed her Complaint on June 25, 2021. (Compl.)[2] On August 29, 2021, after receiving an extension, (Dkt. No. 11), the City filed a pre-motion letter outlining the grounds for their anticipated motion to dismiss, (Dkt. No. 12), and Plaintiff filed a response on August 30, 2021, (Dkt. No. 14). On September 28, 2021, after also receiving an extension, (Dkt. No. 18), Evans filed a pre-motion letter outlining the grounds for his anticipated motion to dismiss, (Dkt. No. 20), and Plaintiff filed a response on the same day, (Dkt. No. 21). On October 13, 2021, the Court set a briefing schedule for Defendants' Motions. (Dkt. No. 25.) On December 10, 2021, Defendants each filed their separate Motions To Dismiss and accompanying papers. (Dkt. Nos. 26–27.) Plaintiff submitted her Opposition on January 8, 2022, which she then amended on

---

[2] On April 13, 2020, in a separate action, Plaintiff filed a different complaint containing similar allegations. (*See* Decl. of William O. Wagstaff III, Esq. ("Wagstaff Decl.") ¶ 3 (Dkt. No. 27-1).) However, on July 20, 2020, Plaintiff voluntarily dismissed that case. (*Id.* ¶ 4.) Because the Complaint (docketed June 25, 2021) is the only complaint which has been filed in this Action, the Court will refer to that document as the "Complaint" rather than the "Amended Complaint."

January 10, 2022. (Dkt. Nos. 28–29.)  On January 24, 2022, Defendants filed separate Replies to

Plaintiff's Opposition, and, on the same day, the City amended their Reply.  (Dkt. Nos. 30–32.)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it

tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation

marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to

relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been

stated adequately, it may be supported by showing any set of facts consistent with the allegations

in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to

relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims

across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also*

*Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief

will . . . be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense.  But where the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (alteration in original)

(quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B. Analysis

The City moves to dismiss all the claims against it, i.e., the gender discrimination and hostile work environment claims under Title VII (Counts I and II) and under New York Executive Law § 296 (Counts VI and VII), and the *Monell* claim (Count V). (*See generally* Mem. of Law in Supp. of Def. City of Mount Vernon's Mot. To Dismiss ("City's Mem.") (Dkt. No. 27); *see also* Compl.)[3] Evans moves to dismiss the gender discrimination and hostile work environment claims under New York Executive Law § 296 (Counts VI and VII), but he does

---

[3] The City also moved to dismiss the claim under NYCPLR § 213-c (Count VIII). (*See* City's Mem. 12–13.) However, in her Opposition, Plaintiff noted that she withdrew Count VIII. (*See* Pl.'s Mem. of Law in Opp'n to Defs.' Mots. To Dismiss ("Pl.'s Opp'n") 4 n.1 (Dkt. No. 29).) The Court will therefore not address this claim.

appear to not move to dismiss the equivalent claims against him under § 1983 (Counts III and IV).  (*See* Mem. of Law in Supp. of Def. Evans' Mot. To Dismiss ("Evans' Mem.") 1 (Dkt. No. 26-1).)[4]  The Court will address each of the remaining claims that are subject to the Motions (i.e., all remaining claims except Counts III and IV).

### 1.  Title VII Claims (Counts I and II)

#### a.  Gender Discrimination Claim (Count I)

"As a precondition to bringing a Title VII suit in federal court, a plaintiff in New York must first pursue administrative remedies with the EEOC by filing a timely complaint within 300 days of an unlawful employment practice." *Caruana v. N. Y. State Dep't of Corr. & Cmty. Supervision*, No. 19-CV-733, 2022 WL 1192802, at *2 (W.D.N.Y. Jan. 14, 2022) (citing *Yu v. City of New York*, 792 F. App'x 117, 118 (2d Cir. 2020)), *report and recommendation adopted*, 2022 WL 1189868 (W.D.N.Y. Apr. 20, 2022); *see also Boncoeur v. Haverstraw-Stony Point Cent. Sch. Dist.*, No. 20-CV-10923, 2022 WL 845770, at *4 (S.D.N.Y. Mar. 22, 2022) (same); *Impellizzeri v. New York*, No. 17-CV-230, 2021 WL 4844275, at *2 (N.D.N.Y. Oct. 18, 2021) ("A plaintiff who wishes to pursue a federal employment discrimination suit under Title VII must file a charge with the EEOC within 300 days of the alleged unlawful employment practice or challenged discriminatory act." (citation omitted)).  "The filing requirement is analogous to a statute of limitations, barring all claims arising outside the 300-day period." *Caruana*, 2022 WL 1192802, at *2 (citing *Russell v. County of Nassau*, 696 F. Supp. 2d 213, 226 (E.D.N.Y. 2010)).

---

[4] Evans also moves to dismiss the gender discrimination and hostile work environment claims under Title VII (Counts I and II), but the Court notes that these claims are not made against Evans, (*see* Compl. ¶¶ 50–55), probably "because individuals are not subject to liability under Title VII." *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000).

Here, Plaintiff filed her EEOC complaint on December 12, 2019. (Compl. ¶ 3.) The City argues that the clock began running on September 29, 2018, the date of Plaintiff's alleged sexual assault. (*See* City's Mem. 7.) Plaintiff argues that the clock began running on April 19, 2019, (Pl.'s Opp'n 5), which appears to be the date on which the City informed Plaintiff that it had not received her Notice of Claim or her request to have the sexual assault considered a Line of Duty under GML 207-c, (Compl. ¶ 44). According to the City's clock, Plaintiff filed her EEOC complaint on day 439, which is outside of the 300-day window. According to Plaintiff's clock, she filed her EEOC charge on day 202, which is inside of the 300-day window.

The Court agrees with Defendants' calculation for several reasons. First, "[a] sexual [assault] is a discrete act, and discrete acts occur on the day they occur—even if they have effects lasting into the limitations period." *Williams v. N.Y.C. Dep't of Educ.*, No. 19-CV-1353, 2019 WL 4393546, at *7 (S.D.N.Y. Aug. 28, 2019). Plaintiff provides no authority to support her contention that the clock should begin running on her claim of gender discrimination stemming from her sexual assault on any day other than the date of the assault itself.

Second, the continuing violations doctrine does not apply here. Under the continuing violations doctrine, "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 155–56 (2d Cir. 2012) (quotation marks omitted). However, "in th[e] [Second] Circuit, the continuing violations doctrine is disfavored outside of a hostile work environment situation, and should only be applied in compelling circumstances." *Williams*, 2019 WL 4393546, at *9 (quotation marks omitted). To the extent that Plaintiff claims that the City mishandled its investigation into the sexual assault, these acts

are too discrete to apply the continuing violation doctrine. This is because "[i]ncidents that involve different perpetrators, actions, or targets, or are temporally distant from one another, may be insufficiently related." *Id*. The handling of the investigation into Plaintiff's report of sexual assault involved different City employees and occurred on a different timeline than the sexual assault itself. (*See generally* Compl.)

Third, the doctrine of equitable tolling does not apply. "The doctrine of equitable tolling rests on the assumption that a statute of limitations will not run against a plaintiff unaware of her cause of action." *Semper v. N.Y. Methodist Hosp.*, 786 F. Supp. 2d 566, 577 (E.D.N.Y. 2011) (citing *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir. 1985)). This is not a case where Plaintiff was unaware of her cause of action; she became aware of it from the moment of her alleged sexual assault. "Equitable tolling is also proper when the plaintiff '(1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply.'" *Senecal v. B.G. Lenders Serv. LLC*, 976 F. Supp. 2d 199, 210 (N.D.N.Y. 2013) (quoting *Zerilli–Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80–81 (2d Cir. 2003)). "Exceptional circumstances that might warrant equitable tolling include 'where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion.'" *Baroor v. N.Y.C. Dep't of Educ.*, 362 F. App'x 157, 159 (2d Cir. 2010) (summary order) (quoting *Zerilli–Edelglass*, 333 F.3d at 80). Here, Plaintiff does not allege that any such condition prevented her from filing an EEOC charge. Instead, Plaintiff "appears to ask this Court to equitably toll the operation of a strict limitations period on account of . . . her tardiness in filing the EEOC charge . . . ." *Semper*, 786 F. Supp. 2d at 578. Plaintiff therefore "simply fails to present evidence of the kind of exceptional circumstances required for equitable tolling." *Russell*, 696 F. Supp. 2d at 230.

In sum, the Court considers the date of the sexual assault to be the relevant date on which the clock started.  Thus, Plaintiff's Title VII gender discrimination claim is dismissed as untimely.

### b. Hostile Work Environment Claim (Count II)

"In contrast to Title VII discrimination . . . claims, hostile work environment claims involve a repetitive pattern of conduct, rather than discrete acts.  Therefore, by their nature, hostile work environment claims more easily lend themselves to application of the continuing violation doctrine."  *Roberts v. Sage Corp.*, No. 20-CV-365, 2021 WL 3617670, at *4 (N.D.N.Y. Aug. 16, 2021).  "A claim of hostile work environment is timely so long as one act contributing to the claim occurred within the statutory period; if it did, 'the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'"  *Patterson v. County of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)).

To state a claim of hostile work environment, a plaintiff must allege "(1) that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer."  *Becker v. Ulster County*, 167 F. Supp. 2d 549, 554 (N.D.N.Y. 2001) (quoting *Murray v. N.Y. Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995)).  However, "it is well settled in [the Second] Circuit that even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace."  *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).  Plaintiff's alleged sexual assault is, on its own, sufficient to state a claim for hostile work environment.  *See Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 437 (2d Cir. 1999) (noting that a

single incident of sexual assault may be sufficient to alter the terms and conditions of the

victim's employment and thus make out a claim for hostile work environment); *Atkinson v.*

*Singh*, No. 19-CV-3779, 2022 WL 137634, at *9 (S.D.N.Y. Jan. 14, 2022) (same).  However, as

discussed above, the sexual assault occurred outside of the 300-day window for Title VII claims

and is therefore untimely.  Plaintiff does not make any other allegations sufficient to alter the

terms and conditions of her employment, other than her claims that the City handled her report

inappropriately, (*see generally* Compl.); that allegation, however, goes to the second element,

and not the first, *Becker*, 167 F. Supp. 2d at 554.  Thus, the allegation that the City mishandled

the response to Plaintiff's report cannot bring Plaintiff's claim within the statute of limitations,

because Plaintiff must first establish a hostile environment before the City can be held liable for

it.  *See Murray*, 57 F.3d at 249 (describing two-step process in which the plaintiff first must

allege a hostile work environment and must then establish that a "a specific basis exists for

imputing the conduct that created the hostile environment to the employer"); *Blue v. City of*

*Hartford*, No. 18-CV-974, 2019 WL 7882565, at *13 (D. Conn. Oct. 22, 2019) (same).

     In any event, Plaintiff cannot establish that the City is liable.  "Once a plaintiff has

established the existence of a hostile workplace, the plaintiff must also show 'that a specific basis

exists for imputing the conduct that created the hostile environment to the employer.'"  *Blue*,

2019 WL 7882565, at *13 (quoting *Murray*, 57 F.3d at 249).  "An employer is strictly liable for

a supervisor's [sexual] harassment of a supervised employee if that harassment results in a

tangible employment action against the victim."  *Id.*  "To constitute an adverse employment

action in the context of a [Title VII] claim, an action must cause 'a materially adverse change in

the terms and conditions of employment.'"  *Henry v. N.Y.C. Health & Hosp. Corp.*, 18

F. Supp. 3d 396, 404 (S.D.N.Y. 2014) (quoting *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d

Cir. 2008)).  "To be materially adverse, a change in working conditions must be more disruptive

than a mere inconvenience or an alteration of job responsibilities.  Examples of such a change

include termination of employment, a demotion evidenced by a decrease in wage or salary, a less

distinguished title, a material loss of benefits, significantly diminished material responsibilities,

or other indices unique to a particular situation.'"  *Id.* (quoting *Mathirampuzha*, 548 F.3d at 78).

Plaintiff does not allege that she was terminated, that she was demoted, or that she experienced a

material loss of benefits or responsibilities.  (*See generally* Compl.)  In fact, Plaintiff concedes

that the City granted her application for Line of Duty benefits under GML 207-c.  (*See* Compl.

¶ 48.)

      The City would also not be liable under the more lenient standard for a harassment by a

coworker rather than a supervisor.  "[E]mployer liability for a hostile environment created by

coworkers, or by a low-level supervisor who does not rely on his supervisory authority in

carrying out the harassment, attaches only when the employer has either provided no reasonable

avenue for complaint or knew of the harassment but did nothing about it."  *Murray*, 57 F.3d at

249 (quotation marks omitted); *see also MacCluskey v. Univ. of Conn. Health Ctr.*, No. 13-CV-

1408, 2017 WL 684440, at *5 (D. Conn. Feb. 21, 2017) ("[W]hen the harassment is attributable

to a coworker, rather than a supervisor, the employer will be held liable only for its own

negligence." (quotation marks omitted)), *aff'd*, 707 F. App'x 44 (2d Cir. 2017).  Here, however,

the City did provide a reasonable avenue for complaint, as demonstrated by the fact that Plaintiff

filed a Notice of Claim and a request to have the sexual assault considered a Line of Duty under

GML 207-c.  (Compl. ¶¶ 38–39.)  Further, the City did provide some remedial action by

conducting an investigation into the incident and reaching a settlement that resulted in Evans

being demoted.  (*Id.* ¶¶ 45–46.)  Courts within the Second Circuit have found similar actions to

the ones that the City took to be sufficient to absolve the employer from liability. *See Gonzalez*, 262 F. Supp. 2d at 355 (finding sufficient remedial action where the employer conducted an investigation and suspended the harasser for two weeks without pay); *Wahlstrom v. Metro–N. Commuter R.R. Co.*, 89 F. Supp. 2d 506, 525–26 (S.D.N.Y. 2000) (finding sufficient remedial action where the employer initiated a six-week process which culminated in reprimanding the harasser for his actions); *cf. Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (concluding that the plaintiff "alleged sufficient facts . . . [to] imput[e] the discriminatory conduct to" the plaintiff's employer because the plaintiff "provided evidence that both his immediate supervisor and the supervisor for the entire [unit in which the plaintiff worked] were aware that he was experiencing a hostile work environment, yet neither took *any* action either to disapprove of or to remedy the situation" (emphasis added)); *Blue*, 2019 WL 7882565, at *14 (finding that the plaintiff had sufficiently alleged the defendant-employer's liability where the defendant "did not take *any* action after learning of the result of the [internal] investigation."). In contrast to the defendants in *Feingold* and *Blue*, the City did take some remedial action by conducting an investigation and reaching a settlement with Evans in which he agreed to a demotion. (Compl. ¶ 40.)

This resolution, though perhaps not the one that Plaintiff desired, demonstrates that the City took remedial action. "While [P]laintiff [may believe that Evans] should have been terminated . . . , the law does not require such a result." *Jones v. AMR Am. Airlines, Inc.*, No. 11-CV-4857, 2016 WL 3248309, at *6 (E.D.N.Y. June 10, 2016); *see also Gonzalez*, 262 F. Supp. 2d at 355 (holding that an employer's remedial action "need not necessarily expel the harasser from the work environment to be effective, but rather it should be 'sufficiently calculated to end the harassment'" (quoting *Murray*, 57 F.3d at 250))). "By far the best evidence that [the City's]

14

response was effective is that [P]laintiff [does not allege that she] has [] been sexually harassed by [Evans] or any other [City employees] since [reporting the assault] nor [does she allege that Evans has] been accused of accosting any other employees since [his demotion]." *Gonzalez*, 262 F. Supp. 2d at 356 (citation omitted). (*See also generally* Compl.)

Thus, because Plaintiff's hostile work environment claim under Title VII is both untimely and insufficient, it is dismissed.

### 2. New York Executive Law § 296 (Count VII)

Plaintiff's gender discrimination and hostile work environment claims under New York Executive Law are similarly untimely. Although "claims brought under New York State Executive Law § 296 . . . are subject to a three-year statute of limitations," *Davison v. N.Y.C. Transit Auth.*, No. 07-CV-3225, 2008 WL 3334078, at *2 (E.D.N.Y. Aug. 8, 2008), the City of Mount Vernon's Charter (the "Charter") provides that claims against the City involving conduct of one of its employees are subject to a one-year statute of limitations, *see* City of Mount Vernon Charter § 265.[5] "New York courts have consistently rejected arguments that the notice of claim

---

[5] Specifically, the Charter provides:

The City shall not be liable in a civil action for damages or injuries to person or property or invasion of personal or property rights of any name or nature whatsoever, whether casual or continuing, arising at law or in equity, alleged to have been caused or sustained, in whole or in part, by or because of any omission of duty, wrongful act, fault, neglect, misfeasance[,] or negligence on the part of the City, or any of its agents, officers[,] or employees unless a written notice of claim shall have been made and served in compliance with Section 50-e of the General Municipal Law, nor unless an action shall be commenced thereon within one year after the happening of such accident or injury or the occurrence of such act, omission, fault[,] or neglect but no action shall be commenced to recover upon or enforce any such claim against the City until the expiration of three months after the service of said notice.

City of Mount Vernon Charter § 265.

and statute of limitations provisions in municipal charters are unenforceable." *Beauchine v. City of Syracuse*, No. 21-CV-845, 2022 WL 561548, at *7 (N.D.N.Y. Feb. 24, 2022).  For example, in *Farrell v. City of Kingston* and *Picciano v. Nassau County Civil Service Commission*, the Third and Second Departments found that the plaintiffs' state discrimination claims were subject to relevant city charters' notice of claim requirements, rejecting the plaintiffs' arguments that the charters were unenforceable in light of New York's other statutory provisions.  *See Farrell v. City of Kingston,* 69 N.Y.S.3d 364, 366–67 (App. Div. 2017); *Picciano v. Nassau Cnty. Civil Serv. Comm'n*, 736 N.Y.S.2d 55, 60–61 (App. Div. 2001).

It is an open question in the Second Circuit whether the filing of an EEOC charge tolls the statute of limitations for discrimination claims under the New York Executive Law.  *See Shojae v. Harlem Hosp. Ctr.*, 764 F. App'x 113, 114 n.2 (2d Cir. 2019) (summary order) ("We have not resolved whether the statute of limitations under the [New York State Human Rights Law] and [New York City Human Rights Law] is tolled while a complaint is pending with the [EEOC].").  The Second Circuit has held, however, that "filing an EEOC charge does not toll the limitations period for state-law tort claims, even if those claims arise out of the same factual circumstances as the discrimination alleged in the EEOC charge." *Castagna v. Luceno*, 744 F.3d 254, 255 (2d Cir. 2014).  The recent trend in this District, however, is that the *Catagna* holding does not extend to NYSHRL claims, such that the filing of an EEOC *does* toll the statute of limitations for state law discrimination claims.  *See, e.g.*, *Panchishak v. County of Rockland*, No. 20-CV-10095, 2021 WL 4429840, at *4 (S.D.N.Y. Sept. 27, 2021); *Schneider v. Wal-Mart Stores, Inc.*, No. 16-CV-2010, 2019 WL 294309, at *3 (S.D.N.Y. Jan. 23, 2019); *Cameron v. N.Y.C. Dep't of Educ.*, No. 15-CV-9900, 2018 WL 1027710, at *12 (S.D.N.Y. Feb. 21, 2018).

Regardless of whether the filing of Plaintiff's EEOC charge tolled the statute of limitations, Plaintiff's state law claims are untimely.  As discussed above, the relevant date for the statute of limitations is the date of Plaintiff's alleged sexual assault.  Thus, even if Plaintiff's EEOC charge tolled the statute of limitations, Plaintiff filed the EEOC charge 439 days after her sexual assault, which exceeds the one-year statute of limitations.  (*See* Compl. ¶ 39; City's Mem. 7.)  Plaintiff's state law claims are therefore dismissed as untimely.

### 3. *Monell* Claim (Count V)

"To state a claim under [§ 1983], the plaintiff must show that a defendant, acting under color of state law, deprived him of a federal constitutional or statutory right."  *Sykes v. Bank of Am.*, 723 F.3d 399, 405–06 (2d Cir. 2013).  However, "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."  *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008), *cert. denied*, 558 U.S. 933 (2009).

The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor."  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *see also Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right.").  In other words, a municipality may not be liable under § 1983 "by

17

application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469,

478 (1986) (italics omitted); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y.

2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a

wrong"). Instead, there must be a "direct causal link between a municipal policy or custom and

the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see*

*also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnments should be held

responsible when, and only when, their official policies cause their employees to violate another

person's constitutional rights.").

    "In determining municipal liability, it is necessary to conduct a separate inquiry into

whether there exists a 'policy' or 'custom.'" *Davis v. City of New York*, 228 F. Supp. 2d 327,

336 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003). Normally, "a custom or policy

cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee

of the [municipality]." *Newton*, 566 F. Supp. 2d at 271; *see also City of Oklahoma City v. Tuttle*,

471 U.S. 808, 823–24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional

activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes

proof that it was caused by an existing, unconstitutional municipal policy, which policy can be

attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411,

427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the

affirmative link between the municipal policy or custom and the alleged unconstitutional

violation.").

    A plaintiff may satisfy the "policy or custom" requirement by alleging one of the

following:

    (1) a formal policy officially endorsed by the municipality; (2) actions taken by
    government officials responsible for establishing the municipal policies that caused

18

> the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

Moreover, a plaintiff must also establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury. *See Tuttle*, 471 U.S. at 824 n.8 ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between[, for example,] the training inadequacies alleged, and the particular constitutional violation at issue." (emphasis omitted)); *Roe*, 542 F.3d at 37 (holding that "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury" (quoting *Brown*, 520 U.S. at 404)); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the [c]ity."); *Johnson v. City of New York*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that after demonstrating the existence of a municipal policy or custom, "a plaintiff must establish a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights" (quotation marks omitted)).

Plaintiff argues that "municipal policymakers exhibited deliberate indifference by failing to investigate or rectify her claims, failing to properly train, supervise[,] and discipline Defendant [Evans] and related members of management." (Pl.'s Opp'n 15.) "In order to establish a *Monell* claim under either failure to train or failure to supervise, a plaintiff must establish deliberate indifference by the municipality." *R.A. v. City of New York*, 206 F. Supp. 3d 799, 803 (E.D.N.Y.

2016).  "To establish deliberate indifference[,] a plaintiff must show that a policymaking official

was aware of constitutional injury, or the risk of constitutional injury, but failed to take

appropriate action to prevent or sanction violations of constitutional rights."  *Jones v. Town of*

*East Haven*, 691 F.3d 72, 81 (2d Cir. 2012).  In *Walker v. City of New York*, 974 F.2d 293 (2d

Cir. 1992), the Second Circuit identified three requirements that must be met before a

municipality's failure to train or supervise constitutes deliberate indifference:

> First, the plaintiff must show that a policymaker knows "to a moral certainty" that
> her employees will confront a given situation. . . . Thus, a policymaker does not
> exhibit deliberate indifference by failing to train employees for rare or unforeseen
> events.  Second, the plaintiff must show that the situation either presents the
> employee with a difficult choice of the sort that training or supervision will make
> less difficult or that there is a history of employees mishandling the
> situation. . . . .  Finally, the plaintiff must show that the wrong choice by the city
> employee will frequently cause the deprivation of a citizen's constitutional rights.

*Id.* at 297 (citations omitted); *see also Pettiford v. City of Yonkers*, No. 14-CV-6271,

2021 WL 2556172, at *6 (S.D.N.Y. June 21, 2021) (same).  Plaintiff must allege all three

elements.  *Id.*

Here, Plaintiff fails to allege the second element.  "The decision to commit a sexual

assault—a blatantly criminal act—cannot reasonably be seen as posing the type of 'difficult

choice' contemplated by the Second Circuit in *Walker*."  *Noonan v. City of New York*, No. 14-

CV-4084, 2015 WL 3948836, at *4 (S.D.N.Y. June 26, 2015); *see also R.A.*, 206 F. Supp. 3d at

803 (dismissing *Monell* claim despite the defendant-officer having nine sexual assault

complaints in his personnel file, because "[t]he complaints against [the defendant-officer] show a

conscious decision by [the officer] to commit sexual assault, which does not present a 'difficult

choice' for which further training would prevent"); *Doe v. City of New York*, No. 09-CV-9895,

2013 WL 796014, at *4 (S.D.N.Y. Mar. 4, 2013) (finding an officer's decision to rape an

intoxicated Jane Doe in responding to a 911 call did not constitute a "difficult choice of the sort

that training or supervision will make less difficult"), *aff'd*, 558 F. App'x 75 (2d Cir. 2014).

Moreover, Plaintiff points to one incident of sexual assault by Evans, and "'[s]ingle-incident

liability' is rare" under *Monell. R.A.*, 206 F. Supp. 3d at 803 (citing *Connick v. Thompson*, 563

U.S. 51, 63–64 (2011)). Thus, Evans' decision to sexually assault Plaintiff does not constitute a

"difficult choice of the sort that training or supervision will make less difficult" and is therefore

insufficient to establish *Monell* liability. *Walker*, 974 F.2d at 297. Accordingly, Plaintiff's

*Monell* claim (Count V) is dismissed.

### III. Conclusion

For the foregoing reasons, the City's Motion To Dismiss is granted, and Evans' Motion

To Dismiss is granted. Thus, the only remaining claims in this lawsuit are the gender

discrimination and hostile work environment claims against Evans under § 1983 (Counts III and

IV). The Clerk of Court is respectfully directed to close the pending Motions. (Dkt. Nos. 26–

27.)

SO ORDERED.

DATED:      August 24, 2022   White
            Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE