UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUCY ROCHES-BOWMAN,

                              Plaintiff,

        v.                                              No. 21-CV-5572 (KMK)

ARISTOTLE EVANS,                                        <u>OPINION & ORDER</u>

                              Defendant.

<u>Appearances:</u>

Eric Sanders, Esq.
The Sanders Firm, P.C.
New York, NY
*Counsel for Plaintiff*

Lucas B. Franken, Esq.
Lambros Y. Lambrou, Esq.
The Lambrou Law Firm
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

        Lucy Roches-Bowman ("Plaintiff") brings this Action against Aristotle Evans

("Defendant"), alleging gender discrimination and hostile work environment claims under

42 U.S.C. § 1983 ("§ 1983"). (*See* Compl. ¶¶ 60–67 (Dkt. No. 1).)[1]  Before the Court is

---

[1] Plaintiff had initially filed (1) gender discrimination and hostile work environment claims against the City of Mount Vernon (the "City") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; (2) a municipal liability claim under § 1983 against the City; (3) gender discrimination and hostile work environment claims under N.Y. Exec. Law § 296 against both Defendant and the City; and (4) a claim for sexual abuse pursuant to N.Y. C.P.L.R. § 213-c against both Defendant and the City. (*See* Op. & Order ("2022 MTD Op.") 5 (Dkt. No. 33).)  Plaintiff withdrew her sexual abuse claim, and the Court dismissed the remainder of these claims on August 24, 2022. (*See id.* at 7 n.3, 21.)

Defendant's Motion for Summary Judgment on Plaintiff's § 1983 claims (the "Defendant's Motion"), (*see* Def's Not. of Mot. (Dkt. No. 76)), and Plaintiff's Motion for Summary Judgment on Defendant's counterclaims ("Plaintiff's Motion"), (*see* Pl's Not. of Mot. (Dkt. No. 72)). For the reasons explained below, Defendant's Motion is granted and Plaintiff's Motion is denied as moot.

## I. Background

### A. Factual Background

The following facts are taken from the Parties' statements pursuant to Local Civil Rule 56.1. (*See* Def's Rule 56.1 Statement ("Def's 56.1") (Dkt. No. 79); Pl's Response Rule 56.1 Statement ("Pl's Resp. 56.1") (Dkt. No. 89); Pl's Rule 56.1 Statement ("Pl's 56.1") (Dkt. No. 74); Def's Response Rule 56.1 Statement ("Def's Resp. 56.1") (Dkt. No. 85).)[2]

---

Separately, unless otherwise noted, the Court cites to the ECF-stamped page number in the upper righthand corner of each page.

[2] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civ. R. 56.1(a). The nonmoving party, in turn, must submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." *Id.* at 56.1(b). "If the opposing party . . . fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule." *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (citation omitted); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (adopting the same rule).

In his Response Rule 56.1 Statement, Defendant included a Supplemental Rule 56.1 Statement of Facts. (*See* Def's Resp. 56.1 ¶¶ 54–88.) Plaintiff did not file a response to Defendant's Supplemental Rule 56.1 Statement of Facts. (*See generally* Dkt.) Because Plaintiff has not filed a response, the Court deems those facts admitted and will rely on them as relevant to deciding the instant Motions, but only insofar as those facts do not overlap with the facts in Defendant's Rule 56.1 Statement to which Plaintiff did respond. *See Seward v. Antonini*, No. 20-CV-9251, 2023 WL 6387180, at *1 (S.D.N.Y. Sept. 29, 2023) (deeming statement of additional facts admitted where opposing party did not respond); *Polanco v. Porter*, No. 21-CV-10927, 2023 WL 2751340, at *2 n.3 (S.D.N.Y. Mar. 31, 2023) (same). Further, the Court will not deem facts admitted where Defendant relies on legal argument or conclusions. *See U.S. Info.*

Additionally, where necessary, the Court cites directly to the admissible evidence submitted by the Parties. The facts as described below are undisputed unless otherwise noted.

### 1. The Parties

This case arises out of an alleged sexual assault—committed by Defendant against Plaintiff—on September 29, 2018. (*See* Def's 56.1 ¶¶ 2, 13; Pl's Resp. 56.1 ¶¶ 2, 13.)[3] As of that date, both Plaintiff and Defendant were members of the Mount Vernon Police Department ("MVPD"), (*see* Def's 56.1 ¶ 2; Pl's Resp. 56.1 ¶ 2); Plaintiff held the rank of Police Officer, (*see* Decl. of Lambros Y. Lambrou, Esq. ("Lambrou Decl.") Ex. A ("Pl's Dep. Tr.") at 47:18–25 (Dkt. No. 78)), and Defendant held the rank of Sergeant, (*see* Decl. of Eric Sanders, Esq. in Supp. of Mot. ("Sanders Decl.") Ex. T ("Def's Dep. Tr.") at 88:3–21 (Dkt. No. 73-21–24).)[4]

It is undisputed that, prior to the September 29, 2018 Incident, Plaintiff and Defendant had engaged in consensual, sexual conduct with one another. (Def's 56.1 ¶¶ 3, 5; Pl's Resp. 56.1 ¶¶ 3, 5.) In particular, Plaintiff testified during her deposition that in early 2013 she and Defendant worked on a detail together and that on one occasion—while in an undercover vehicle—they kissed and were "consensually touching each other." (Pl's Dep. Tr. at 93:16–94:24; *see also id.* at 93:23–94:3 (Plaintiff's testimony that Defendant "was rubbing on my thighs, [and] I was massaging his groin area[.] . . . [W]e were kissing. And he also attempted to

---

*Sys., Inc. v. Int'l Brotherhood of Elec. Workers Loc. Union No. 3*, No. 00-CV-4763, 2006 WL 2136249, at *3 (S.D.N.Y. Aug. 1, 2006) (emphasis in original) (quoting *Rodriguez v. Schneider*, No. 95-CV-4083, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999)) (explaining that, in the Second Circuit, Rule 56.1 statements and responses "*are not [legal] argument.* They should contain factual assertions with citation to the record. They should not contain conclusions" (emphasis added)).

[3] The Court will refer to this incident as the "September 29, 2018 Incident."

[4] Citations to deposition transcripts reference the internal page and line numbers therein.

touch my vaginal area but it was uncomfortable so I asked him to stop.").)  Additionally, shortly after that initial encounter, Plaintiff and Defendant engaged in consensual sexual intercourse in Defendant's vehicle.  (*See id.* at 97:21–100:25; *see also id.* at 95:18–20 (Plaintiff's testimony that this encounter took place in "early April 2013").)[5]

### 2.  The Events of September 29, 2018

On September 29, 2018, Plaintiff and Defendant both responded to a dispatch call regarding an unresponsive female found in an apartment.  (*See* Def's 56.1 ¶ 6; Pl's Resp. 56.1 ¶ 6; *see also* Pl's Dep. Tr. at 104:2–105:7.)  Upon arriving, Plaintiff discovered that the unresponsive female had passed away.  (*See* Pl's Dep Tr. at 104:22–105:7.)  After going through police protocols with the decedent's family, Plaintiff and Defendant stepped outside of the apartment and waited in the hallway for the funeral home to arrive and remove the body.  (*See* Def's 56.1 ¶ 7; Pl's Resp. 56.1 ¶ 7.)

While in the hallway, Plaintiff and Defendant first discussed various police matters relating to the decedent's death.  (Pl's Dep. Tr. at 109:17–25.)  Then, Defendant "started personal conversations" with Plaintiff, complementing her by calling her "beautiful" and "sexy." (*Id.* at 110:2–11.)  Defendant continued, stating in reference to the Parties' sexual encounters in 2013, "that's what I like about you, you keep your mouth shut.  You don't talk about things." (*Id.* at 110:12–20.)  Defendant also attempted to touch Plaintiff, but she pushed his hand away,

---

[5] The Parties dispute whether or not this sexual encounter occurred while the Parties were on duty.  (*See* Def's 56.1 ¶ 4 (asserting that this "consensual sexual encounter [occurred] while on the job"); Pl's Resp. 56.1 ¶ 4 (contending that the encounter occurred while the Parties were "off-duty").)  Given that the encounter took place in a parking lot when Defendant was driving Plaintiff home from work, (*see* Pl's Dep. Tr. at 97:21–98:3), it would seem that the Parties were off duty.  In any event, as explained more fully below, *see infra* Section II.B.1, this distinction is not dispositive in connection with the Court's analysis in this case.

told him that she did not want him to touch her, and—after two or three such advances—moved away from him. (*Id.* at 110:20–111:12.)

Even after Plaintiff distanced herself from him, however, Defendant remained undeterred. (*See id.* at 112:5–113:18.) Specifically, after saying, "bring your fine ass over here," Defendant approached Plaintiff, grabbed her buttocks, and rubbed her vaginal area very hard, which hurt Plaintiff. (*Id.* at 112:5–14; *see also id.* at 112:15–17 (Plaintiff's testimony that Defendant "even tried to kiss [her,]" so she "bent [her] head down and told him 'No'").)[6] Later, Defendant grabbed Plaintiff again, telling her that he wanted to engage in sexual intercourse with her and going so far as attempting to pull Plaintiff into the decedent's apartment after the decedent's family members had departed. (*See id.* at 114:4–24.)

A few minutes after that, personnel from the funeral home arrived to recover the decedent's body, and the Parties thereafter entered the building's stairwell in order to leave the premises. (*See* Def's 56.1 ¶ 12; Pl's Resp. 56.1 ¶ 12.) After they entered the stairwell, Defendant grabbed Plaintiff's shoulders and forcibly kissed her mouth. (*See* Pl's Dep. Tr. at 116:10–15.) He then unzipped his pants, took out his penis, and forced Plaintiff to masturbate him until he ejaculated into her hand. (*See id.* at 117:2–120:14.)[7] Whenever she tried to remove her hand to stop, Defendant "put [her] hand right back[.]" (*Id.* at 118:7–18.)

During her deposition, Plaintiff did not offer any testimony suggesting that, during the September 29, 2018 Incident, Defendant referenced his supervisory authority, threatened her with police action, or otherwise referenced the fact that he was a police officer. (Def's 56.1 ¶ 14;

---

[6] During this time, Defendant's advances were occasionally interrupted by the comings and goings of individuals who knew the decedent. (*See* Pl's Dep. Tr. at 113:4–11.)

[7] Defendant "vehemently denies" the notion that the September 29, 2018 Incident was not consensual or constituted sexual assault. (*See* Def's 56.1 ¶ 13.)

Pl's Resp. 56.1 ¶ 14.)  Further, Plaintiff testified that Defendant did not threaten her—verbally or

in any other way—in connection with the September 29, 2018 Incident.  (Pl's Dep. Tr. at 126:9–

17.)[8]

### 3.  Subsequent Discipline of Defendant

On or about October 1, 2018, Plaintiff reported the September 29, 2018 Incident to an

MVPD Sergeant.  (*See* Pl's Dep. Tr. at 146:18–147:11.)  Following Plaintiff's report, Defendant

was placed on modified duty.  (*See* Def's Dep. Tr. at 96:19–98:13.)  Defendant was also

suspended without pay from October 2019 to April 2020.  (*See id.* at 93:22–95:3.)  Ultimately,

the MVPD served Defendant with disciplinary charges, (*see id.* at 100:21–101:13), and—to

settle those charges—Defendant signed an agreement (the "Last Chance Agreement") pursuant

to which Defendant was demoted from the rank of Sergeant to the rank of Police Officer,

resulting in a decrease in his pay and associated benefits, (*see id.* at 171:25–172:7, 174:25–

175:15; *see also* Pl's 56.1 ¶ 48; Def's Resp. 56.1 ¶ 48.)[9]

---

[8] Plaintiff disputes Defendant's assertion that she "swore[] that at no point[] did
[Defendant] threaten [her] in any way."  (*See* Def's 56.1 ¶ 15; Pl's Resp. 56.1 ¶ 15.)  In doing so,
she cites to a portion of her deposition transcript in which she states that she did feel threatened
when Defendant: "groped [her] vaginal area" and buttocks; tried to pull her into the decedent's
apartment; grabbed her and started kissing her; and placed her hand on his penis even when she
tried to stop masturbating him.  (*See* Pl's Dep. Tr. at 235:13–236:14; *see also* Pl's Resp. 56.1
¶ 15 (citing Pl's Dep. Tr. at 232–36).)

[9] Although she met with prosecutors regarding the potential prosecution of Defendant for
the September 29, 2018 Incident, Plaintiff was informed that no criminal charges would be
brought against Defendant because, in Plaintiff's view, the prosecutors "did not take [her] case
seriously" and "basically did not want to deal with [her] case."  (Pl's Dep. Tr. at 160:19–162:15.)

B.  Procedural History

The Court has summarized the procedural history of this Action in its decision on Defendant's Motion To Dismiss.  (*See* 2022 MTD Op. 5–6.)  The Court therefore assumes familiarity with that history and reviews only subsequent proceedings herein.

On August 24, 2022, the Court dismissed all of Plaintiff's remaining claims in this case, except for the gender discrimination and hostile work environment claims under § 1983 against Defendant.  (*See id.* at 21.)  Defendant filed an Answer on October 7, 2022.  (*See generally* Answer (Dkt. No. 34).)  In his Answer, Defendant asserted counterclaims for defamation and libel per se against Plaintiff.  (*See id.* ¶¶ 110–16.)  After requesting and receiving an extension of time to answer, (*see* Dkt. Nos. 42–43), Plaintiff filed an Answer to Defendant's counterclaims on February 21, 2023, (*see generally* Answer to Counterclaims (Dkt. No. 44)).

On October 13, 2023, the Parties jointly notified Judge Judith C. McCarthy that discovery in this case had been completed.  (*See* Letter from Lucas B. Franken, Esq. to the Hon. Judith C. McCarthy (Oct. 13, 2023) (Dkt. No. 67).)[10]  Thereafter, Defendant filed a pre-motion letter seeking leave to file his Motion for Summary Judgment on October 20, 2023.  (*See* Letter from Lambros Y. Lambrou, Esq. to Court (Oct. 19, 2023) (Dkt. No. 68).)[11]  The Court adopted a briefing schedule for Defendant's Motion on October 30, 2023.  (*See* Memo Endorsement (Dkt. No. 69).)  Later that same day, Plaintiff responded to Defendant's pre-motion letter and also sought leave to file a Motion for Summary Judgment on Defendant's counterclaims.  (*See* Letter

---

[10] This case previously had been referred to Judge McCarthy for general pre-trial supervision.  (*See* Order of Reference (Dkt. No. 39).)

[11] Although Defendant's pre-motion letter was dated October 19, 2023, it was filed on the docket on October 20, 2023.  (*See generally* Letter from Lambros Y. Lambrou, Esq. to Court (Oct. 19, 2023).)

from Eric Sanders, Esq. to Court (Oct. 30, 2023 (Dkt. No. 70).)  Also on October 30, 2023, the Court adopted the same briefing schedule for Plaintiff's Motion as it had for Defendant's Motion.  (Memo Endorsement (Dkt. No. 71).)

Defendant filed his Motion on November 30, 2023.  (*See* Def's Not. of Mot.; Def's Mem. of Law in Supp. of Mot. ("Def's Mem.") (Dkt. No. 77); Lambrou Decl.; Def's 56.1.)  After requesting an extension, which the Court granted, (*see* Dkt. Nos. 86, 88), Plaintiff filed her Opposition on January 8, 2024, (*see* Pl's Resp. 56.1; Decl. of Eric Sanders, Esq. in Opp'n to Mot. (Dkt. No. 90); Pl's Mem. in Opp'n to Mot. ("Pl's Opp'n") (Dkt. No. 91)).  On January 11, 2024, Defendant filed his Reply.  (Def's Reply Mem. of Law in Further Supp. of Mot. ("Def's Reply") (Dkt. No. 92).)

Separately, Plaintiff filed her Motion on November 30, 2023.  (*See* Pl's Not. of Mot.; Sanders Decl. (Dkt. No. 73); Pl's 56.1; Pl's Mem. of Law in Supp. of Mot. ("Pl's Mem.") (Dkt. No. 75).)  Defendant filed his Opposition on December 28, 2023.  (*See* Decl. of Lucas B. Franken, Esq. (Dkt. No. 83); Def's Opp'n to Mot. ("Def's Opp'n") (Dkt. No. 84); Def's Resp. 56.1.)  Plaintiff did not file a Reply.  (*See generally* Dkt.)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (same); *Truitt v. Salisbury Bank & Tr. Co.*, 52 F.4th 80, 85 (2d Cir. 2022) (same); *Cambridge Funding Source LLC v. Emco Oilfield Servs. LLC*, No. 22-CV-10741, 2023 WL 7405862, at *4 (S.D.N.Y. Nov. 9, 2023) (same).  "In deciding whether to award summary judgment, the court must construe the

record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in [her] favor." *Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021); *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same). "The movant 'bears the initial burden of showing that there is no genuine dispute as to a material fact.'" *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (quoting *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018)); *see also LaFontant v. Mid-Hudson Forensic Psychiatric Ctr.*, No. 18-CV-23, 2023 WL 6610764, at *7 (S.D.N.Y. Oct. 10, 2023) (same); *Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the non[-]moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration adopted) (internal quotation marks and citation omitted); *see also U.S. Bank Nat'l Ass'n as Tr. for Reg. Holders of J.P. Morgan Chase Com. Mortg. Sec. Corp., Multifamily Mortg. Pass-Through Certificates, Series 2017-SB42 v. 160 Palisades Realty Partners LLC*, No. 20-CV-8089, 2022 WL 743928, at *3 (S.D.N.Y. Mar. 10, 2022) (same). Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)); *see also Jennifer Fung-Schwartz, D.P.M, LLC v. Cerner Corp.*, No. 17-CV-233, 2023 WL 6646385, at *3 (S.D.N.Y. Oct. 12, 2023) (same), "and

cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Kollias v. Univ. of Rochester*, No. 18-CV-6566, 2023 WL 5608868, at *4 (W.D.N.Y. Aug. 30, 2023) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading." (quoting *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009))).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Seward*, 2023 WL 6387180, at *12 (quoting *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014)). "At this stage, 'the role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried.'" *U.S. Sec. & Exch. Comm'n v. Amah*, No. 21-CV-6694, 2023 WL 6386956, at *8 (S.D.N.Y. Sept. 28, 2023) (alteration adopted) (quoting *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011)). Therefore, "a court's goal should be 'to isolate and dispose of factually unsupported claims.'" *Sullivan v. Nat'l Express LLC*, No. 21-CV-5789, 2023 WL 6279255, at *8 (S.D.N.Y. Sept. 26, 2023) (quoting *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex Corp.*, 477 U.S. at 323–24)).

When ruling on a motion for summary judgment, a district court should "consider only evidence that would be admissible at trial." *Latimer v. Annucci*, No. 21-CV-1275, 2023 WL 6795495, at *3 (S.D.N.Y. Oct. 13, 2023) (citing *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998)). "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to

testify on the matters stated." *Mozzochi v. Town of Glastonbury*, No. 21-CV-1159, 2023 WL 3303947, at *3 (D. Conn. May 8, 2023) (quoting *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012)); *accord* Fed. R. Civ. P.56(c)(4); *see also E. Fishkill Fire Dist. v. Ferrara Fire Apparatus, Inc.*, No. 20-CV-576, 2023 WL 6386821, at *11 (S.D.N.Y. Sept. 28, 2023) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ." (internal citation omitted)); *Baity*, 51 F. Supp. 3d at 419  (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (internal citation omitted)).

"As a general rule, 'district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage.'" *Parker v. Fantasia*, 425 F. Supp. 3d 171, 183 (S.D.N.Y. 2019) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (noting that at the summary judgment stage, the court is not to "weigh the evidence and determine the truth of the matter"); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (quotation marks omitted)).  Where the evidence presents "a question of 'he said, she said'" the court "cannot . . . take a side at the summary judgment stage." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010); *see also Kassel v. City of Middletown*, 272 F. Supp. 3d 516, 535 (S.D.N.Y. 2017) (noting that "it is not the role of the [c]ourt at summary judgment to resolve [a] factual clash").

However, although witness credibility is usually a question of fact for the jury, *Yu Zhang v. Sabrina USA Inc.*, No. 18-CV-12332, 2021 WL 1198932, at *3 (S.D.N.Y. Mar. 30, 2021), "[b]road, conclusory attacks on the credibility of a witness without more [are] insufficient to raise a genuine issue of material fact that would defeat a motion for summary judgment," *Sec. & Exch. Comm'n v. Airborne Wireless Network*, No. 21-CV-1772, 2023 WL 5938527, at *6 (S.D.N.Y. Sept. 12, 2023) (internal quotation marks and citation omitted); *see also Ezuma v. City Univ. of N.Y.*, 665 F. Supp. 2d 116, 128 (E.D.N.Y. 2009) ("If the moving party has made a properly supported motion for summary judgment, the plaintiff may not respond simply with general attacks upon the defendant's credibility." (alterations adopted) (internal citation omitted)). Thus, "when opposing a motion for summary judgment, the non-moving party may not respond simply with general attacks upon the declarant's credibility, but rather must identify affirmative evidence from which a jury could find that the non-moving party has carried its burden of proof." *Moritz v. Town of Warwick*, No. 15-CV-5424, 2017 WL 4785462, at *8 (S.D.N.Y. Oct. 19, 2017) (alterations adopted) (internal quotation marks and citation omitted); *see also Paul v. Postgraduate Ctr. for Mental Health*, 97 F. Supp. 3d 141, 181 (E.D.N.Y. 2015) ("'Although credibility assessments are improper on a motion for summary judgment,' a court may be justified in dismissing a claim when the 'plaintiff's version of the events is in such discord with the record evidence as to be wholly fanciful.'" (quoting *Pulliam v. Lilly*, No. 07-CV-1243, 2010 WL 935383, at *5 (E.D.N.Y. Mar. 11, 2010))).

B. Analysis

1. Defendant's Motion

In connection with the September 29, 2018 Incident, Plaintiff brings hostile work environment and gender discrimination claims against Defendant under § 1983. (*See* Compl.

¶¶ 60–67.)  Defendant contends that summary judgment in his favor is appropriate because Plaintiff has not adduced sufficient evidence from which a reasonable jury could conclude that he was acting under color of law during the September 29, 2018 Incident, as is required for purposes of her § 1983 claims.  (Def's Mem. 7–12.)  The Court agrees.

To prevail on a claim under § 1983, a plaintiff "must show that a defendant, acting under color of state law, deprived him of a federal constitutional or statutory right."  *Reed v. County of Westchester*, No. 20-CV-2268, 2021 WL 2413376, at \*4 (S.D.N.Y. June 11, 2021) (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 405–06 (2d Cir. 2013)); *see also Wyatt v. Cole*, 504 U.S. 158, 161, (1992) ("The purpose of § 1983 is to deter state actors from using *the badge of their authority* to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." (emphasis added)); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 166 (1970) ("[T]here exists an unbroken line of decisions, extending back many years, in which [the Supreme] Court has declared that action under color of law is a predicate for a cause of action under § 1983." (quotation marks omitted)).  Importantly, this threshold requirement applies to both hostile work environment and gender discrimination claims brought pursuant to § 1983.  *See Kohutka v. Town of Hempstead*, 994 F. Supp. 2d 305, 323 (E.D.N.Y. 2014) (explaining that, to prevail on a hostile work environment claim under § 1983, plaintiffs must establish that any defendants acted "under color of state law"); *see also Jean-Gilles v. Rockland County*, No. 20-CV-1999, 2024 WL 1348791, at \*8 (S.D.N.Y. Mar. 29, 2024) (similar with respect to gender discrimination claims under § 1983).

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  *West v. Atkins*, 487 U.S. 42,

13

49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Kia P. v. McIntyre*, 235 F.3d 749, 755–56 (2d Cir. 2000) (same); *Redd*, 2020 WL 1536596, at *11 (same). In other words, "under 'color' of law means under 'pretense' of law and that acts of officers in the ambit of their personal pursuits are plainly excluded." *Pitchell v. Callan*, 13 F.3d 545, 547–48 (2d Cir. 1994) (quotation marks omitted) (quoting *Screws v. United States*, 325 U.S. 91, 111 (1945) (plurality opinion)); *accord Monsky v. Moraghan*, 127 F.3d 243, 245 (2d Cir. 1997); *Cagan v. Rittenhouse*, No. 22-CV-260, 2024 WL 1345295, at *2 (E.D.N.Y. Mar. 29, 2024). Thus, although "a public employee [generally] acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law[,]" *Savarese v. City of New York*, 547 F. Supp. 3d 305, 337 (S.D.N.Y. 2021) (alteration omitted) (quoting *West*, 487 U.S. at 50), police officers' personal pursuits "do not give rise to section 1983 liability[,]" *Cagan*, 2024 WL 1345295, at *2 (quoting *Pitchell*, 13 F.3d at 548). Indeed, "[t]he fact that a defendant is on-duty is not sufficient [on its own] to show that he or she acted under color of law." *Isaacs v. City of New York*, No. 10-CV-4177, 2012 WL 314870, at *2 (E.D.N.Y. Feb. 1, 2012); *see also Pitchell*, 13 F.3d at 548 ("More is required [to show that a defendant acted under color of law] than a simple determination as to whether an officer was on or off duty when the challenged incident occurred."). "In short, courts look to the nature of the officer's act, not simply his duty status." *Pitchell*, 13 F.3d at 548; *see also Claudio v. Sawyer*, 675 F. Supp. 2d 403, 408 (S.D.N.Y. 2009) ("The court is to look at the totality of the circumstances surrounding the officer's acts, with attention to the nature of the officer's acts (rather than simply the officer's duty status) and the relationship of that conduct to the officer's official duties." (quotation marks omitted)), *aff'd*, 409 F. App'x 464 (2d Cir. 2011) (summary order).

Here, even "constru[ing] the record evidence in the light most favorable to [Plaintiff] and draw[ing] all reasonable inferences in [her] favor[,]" *Torcivia*, 17 F.4th at 354, the "totality of the circumstances surrounding [Defendant's] acts" during the course of the September 29, 2018 Incident demonstrate that he was engaged in a purely personal, even if despicable, pursuit, *Claudio*, 675 F. Supp. 2d at 408. In particular, after walking into the hallway and discussing police matters relating to the decedent, (Pl's Dep. Tr. at 109:17–25), it is undisputed that Defendant changed the subject by bringing up Plaintiff's physical appearance and referencing at least one of the Parties' sexual encounters in 2013, (*see id.* at 110:2–20; *see also* Def's 56.1 ¶ 8; Pl's Resp. 56.1 ¶ 8). Then, Defendant: sought to touch Plaintiff, even after she rebuffed his advances; grabbed Plaintiff's buttocks and rubbed her vaginal area; attempted to pull Plaintiff into the decedent's apartment in order engage in sexual intercourse with her; forcibly kissed Plaintiff; and, finally, forced Plaintiff to masturbate him. (*See generally* Pl's Dep. Tr. at 110:20–120:14.)[12] Plainly, during the course of the September 29, 2018 Incident, Defendant was not "invoking the authority of the [MVPD]" or "acting in accordance with a police regulation," *Pitchell*, 13 F.3d at 548, nor could it reasonably be argued that he was "exercis[ing] power possessed by virtue of state law and made possible only because [he was] clothed with the authority of state law[,]" *West*, 487 U.S. at 50. Instead, he was engaged in the sort of "personal pursuits" that "do not give rise to [§] 1983 liability[.]" *Cagan*, 2024 WL 1345295, at *2 (quoting *Pitchell*, 13 F.3d at 548); *see Kern v. City of Rochester*, 93 F.3d 38, 41, 43 (2d Cir. 1996)

---

[12] Although Defendant denies that certain of these things occurred, (*see* Def's 56.1 ¶ 13)—thereby rendering the September 29, 2018 Incident a quintessential "question of 'he said, she said'" as to which summary judgment is typically not appropriate, *Fincher*, 604 F.3d at 726—that dispute is not material to the Court's color-of-law analysis. Additionally, as noted, the Court emphasizes that it construes the record evidence in the light most favorable to *Plaintiff* for purposes of deciding *Defendant's* Motion.

(holding that the defendant-firefighter who sexually harassed and assaulted his secretary did not do so under color of state law even though the relevant events took place in an office where the defendant regularly conducted city business and while he was a city employee); *Burns v. City of Utica*, 2 F. Supp. 3d 283, 293 (N.D.N.Y.) (concluding—where the plaintiff alleged that the defendant, a fellow firefighter, sexually assaulted her—that the plaintiff failed to state a § 1983 claim because the defendant's "conduct vis-à-vis [the p]laintiff was not related to his duties as a firefighter.  Rather [the defendant's] sexual assault of [the p]laintiff constitutes a 'personal pursuit' that has nothing to do with his official position as a firefighter."), *aff'd*, 590 F. App'x 44 (2d Cir. 2014) (summary order); *Harmon v. Grizzel*, No. 03-CV-169, 2005 WL 1106975, at *1– 2, 7 (S.D. Ohio Apr. 21, 2005) (determining that a police officer who sexually assaulted the plaintiff was not acting under color of state law where the officer used his prior personal relationship with the plaintiff—but not any police authority—to lure her to a parking lot to sexually assault her, and therefore that the officer could "have behaved as he did without the authority of his office"); *see also Roe v. Humke*, 128 F.3d 1213, 1214–16, 1217–18 (8th Cir. 1997) (concluding—where the defendant-police officer served as a goodwill ambassador at a local school, met the minor plaintiff outside of the school in his police car while in uniform, and would occasionally give the plaintiff rides home and buy her soda and candy—that the defendant was not acting under color of state law when he brought the plaintiff to his farm and sexually abused her "because he was neither actually acting in his official capacity or exercising his responsibilities pursuant to state law, nor purporting to so act[;] [the defendant] took [the plaintiff] to his farm for his own personal pursuits, not for any purpose legitimately or purportedly related to the exercise of his responsibilities as a police officer"); *Almand v. DeKalb County*, 103 F.3d 1510, 1514–15 (11th Cir. 1997) (determining that a police officer was not

acting under color of state law when he forced his way into a woman's apartment and raped her because when the officer "reentered the apartment by forcibly breaking in, he was no different from any other ruffian" and the "act of breaking into the apartment and, by force, raping [the plaintiff] was a private act not accomplished because of the power possessed by virtue of state law" (quotation marks omitted)).

In her Opposition, Plaintiff completely fails to address Defendant's color-of-law argument. (*See* Pl's Opp'n 6–8.) In fact, with one exception, the cases Plaintiff relies upon do not involve claims pursuant to § 1983. (*See id.* at 6–7 (almost exclusively citing Title VII cases).) And as to that exception—*Feingold v. New York*—the Second Circuit only addressed very briefly the issue of whether the plaintiff established that the relevant defendants had acted under color of state law in that case. 366 F.3d 138, 144, 159 (2d Cir. 2004) (noting that the plaintiff "ha[d] shown that the deprivations he allege[d] were under color of state law because they were committed by state employees acting in their official capacities as [New York State Department of Motor Vehicles] employees and exercising their responsibilities pursuant to state law[,]" where the plaintiff alleged that he had been discriminated against in his workplace on the basis of his race, religion, and sexual orientation). (*See* Pl's Opp'n 6 (citing *Feingold*—not for any color-of-law argument—but for the proposition that "a single act can create a hostile work environment if it in fact works a transformation of the plaintiffs workplace" (alteration adopted) (citation omitted)).)

Although she does not make this argument, (*see generally* Pl's Opp'n), the most Plaintiff can point to in order to establish that Defendant was acting under color of state law is: (1) the fact that, as an MVPD Sergeant, Defendant was acting as her supervisor on September 29, 2018, (*see, e.g.*, Pl's Dep. Tr. at 147:16–24 (Plaintiff's testimony that Defendant was "supervising

[her]" on September 29, 2018)); (2) the fact that the Parties were on duty and responding to a dispatch call relating to an unresponsive woman that day, (*see* Def's 56.1 ¶ 6; Pl's Resp. 56.1 ¶ 6; *see also* Pl's Dep. Tr. at 104:2–105:7); and (3) Plaintiff's testimony that, before Defendant began making his advances in the hallway of the apartment building, he said to Plaintiff—in reference to their consensual sexual encounter in 2013—"that's what I like about you, you keep your mouth shut.  You don't talk about things[,]" (Pl's Dep. Tr. at 110:12–17).  However, these facts do not suffice, either independently or in tandem, to raise a triable of fact here.

To start, Plaintiff cites no authority that supports the proposition that serving in a supervisory position *alone* is sufficient to establish that a defendant is acting under color of law, (*see generally* Pl's Opp'n), and the Court is aware of no such authority, *see Johnson v. County of Nassau*, No. 10-CV-6061, 2014 WL 4700025, at \*18 (E.D.N.Y. Sept. 22, 2014) (noting that a defendant's supervisory position is a necessary, but not a sufficient, condition for liability to attach in connection with "hostile environment harassment" claims under § 1983); *cf. Annis v. County of Westchester*, 36 F.3d 251, 254 (2d Cir. 1994) (reversing the district court's grant of a motion to dismiss and stating that certain individual defendants were acting under color of law "inasmuch as they were conducting themselves as supervisors for a public employer" where those defendants "subjected [the plaintiff] to vulgar sexual references, harsh and unfounded criticism, and otherwise singled out for different treatment relative to the [d]epartment's male officers").  Further, the fact that Defendant was on duty and responding to a dispatch call is not at all dispositive, as "[m]ultiple courts have held on-duty status [to be] insufficient to show that an officer acted under color of law."  *Isaacs*, 2012 WL 314870, at \*2 & n.2 (collecting cases); *accord Pitchell*, 13 F.3d at 548; *see also Delcambre v. Delcambre*, 635 F.2d 407, 408 (5th Cir. Unit A Jan. 1981) (per curiam) (affirming the district court's post-trial determination that "a

18

federal claim [under § 1983] had not been proven," in part because the defendant was not acting under color of law, where an on-duty chief of police assaulted his sister-in-law at the police station).[13]  The September 29, 2018 Incident simply had nothing to do with the police work the Parties were separately performing in connection with their investigation at the apartment building.  Finally, although it is possible to infer that Defendant's statement—"that's what I like about you, you keep your mouth shut[,] (Pl's Dep. Tr. at 110:13–14)—was a threat, Plaintiff herself testified that she "didn't think that [Defendant's initial compliments and advances were] a threat at all[,]" (*id.* at 111:15–20; *see also* Pl's Resp. 56.1 ¶ 14 (Plaintiff's admission that "at no point during the interactions between [P]laintiff and [Defendant] on September 29, 2018, did [Defendant] reference his supervisory authority, threaten her with police action, or make any reference to being a law enforcement officer.")).[14]

At bottom, these facts (at best) do nothing more than support a fleeting "metaphysical doubt" concerning whether Defendant was acting under color of state law in connection with the September 29, 2018 Incident, which is not enough to survive a motion for summary judgment.

---

[13] The Court notes that the Second Circuit has cited *Delcambre* with approval.  *See Pitchell*, 13 F.3d at 548.

[14] To be sure, Plaintiff did testify that she felt threatened during the course of the September 29, 2018 Incident insofar as Defendant "groped [her] vaginal area" and buttocks, tried to pull her into the decedent's apartment in order to have sexual intercourse, grabbed her and started kissing her, and placed her hand on his penis even when she tried to stop masturbating him.  (*See* Pl's Dep. Tr. at 235:13–236:14; *see also* Pl's Resp. 56.1 ¶ 15.)  However, when it comes to threats, what matters for purposes of determining when a defendant acted under color of law is whether any threats concerned "retaliation through improper future use of official authority."  *Reed*, 2021 WL 2413376, at *6 n.4; *cf. United States v. Giordano*, 442 F.3d 30, 33, 45–46 (2d Cir. 2006) (affirming a judgment of conviction under which the former mayor of Waterbury, Connecticut was found to have committed civil rights violations under color of law in violation of 18 U.S.C. § 242, where he threatened the minors that he was sexually abusing that they would go to jail if they reported anything, and repeatedly indicated that he was heavily involved in police business).  There is no evidence that Defendant explicitly or implicitly threatened Plaintiff with future adverse official action here.

*See Matsushita Elec. Indus. Co.*, 475 U.S. at 586; *see also 183 Bronx Deli Grocery Corp. v. United States*, No. 11-CV-1527, 2012 WL 2359664, at *3 (S.D.N.Y. June 18, 2012) ("The non-movant cannot avoid summary judgment simply by asserting a metaphysical doubt as to the material facts, and may not rely on mere conclusory allegations nor speculation, but instead must offer some *hard evidence* showing that its version of the events is not wholly fanciful." (emphasis added) (citations and quotation marks omitted)).  Simply put, "[Defendant's] alleged sexual assault of [Plaintiff], if proven, was *palpably a personal pursuit* entirely unrelated to his duties as a [police officer.]"  *Burns*, 590 F. App'x at 50 (summary order) (emphasis added). Therefore, there is no triable issue of fact as to whether Defendant's alleged conduct was committed under color of law.  *See Pitchell*, 13 F.3d at 547–48.  Accordingly, the Court grants summary judgment in Defendant's favor on Plaintiff's only remaining claims in this case—namely, her hostile work environment and gender discrimination claims under § 1983.

To be clear, in so holding, the Court in no way exonerates Defendant of Plaintiff's allegations; instead, the Court simply holds that there is no genuine dispute as to any material fact with respect to the remaining claims that Plaintiff chose to press against Defendant, because Plaintiff has not adduced evidence from which a reasonable jury could conclude that Defendant was acting under color of state law during the September 29, 2018 Incident.

### 2.  Plaintiff's Motion

In his Answer, Defendant asserted counterclaims against Plaintiff for defamation and libel per se.  (*See* Answer ¶¶ 110–16.)  Plaintiff's moves for summary judgment on those counterclaims, arguing that Defendant knowingly and voluntarily waived his right to sue Plaintiff in connection with the September 29, 2018 Incident when he signed the Last Chance Agreement.  (*See* Pl's Mem. 6–8.)

In light of the Court's dismissal of Plaintiff's federal claims, *see supra* Section II.B.1, the

Court declines to exercise supplemental jurisdiction over Defendant's state-law counterclaims,

*see* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction

over a claim if . . . the district court has dismissed all claims over which it has original

jurisdiction . . . .").[15]  "[I]n the usual case in which all federal-law claims are eliminated before

trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial

economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction

over the remaining state-law claims."  *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med.

Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013)

(quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003)); *see also One

Commc'ns Corp. v. JP Morgan SBIC LLC*, 381 F. App'x 75, 82 (2d Cir. 2010) (summary order)

("If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion

to decline to assert supplemental jurisdiction over any state law claims . . . .").  The same holds

---

[15] The Court notes that it is unclear from the record whether Defendant intended to rely upon the Court's supplemental jurisdiction in connection with his counterclaims.  (*See generally* Answer (failing to provide any basis for the Court's jurisdiction over Defendant's counterclaims).)  Thus, Defendant may have intended to rely upon the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.  "To establish diversity jurisdiction, there must be[, inter alia,] complete diversity of citizenship between the plaintiffs and the defendants." *Butler v. Faraci*, No. 24-CV-36, 2024 WL 1282352, at *4 (E.D.N.Y. Mar. 26, 2024) (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005)); *St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005) ("Diversity is not complete if any plaintiff is a citizen of the same state as any defendant.").  Here, however, Defendant has made *no* allegations whatsoever as to either his or Plaintiff's citizenship.  (*See generally* Answer.)  Accordingly, Defendant cannot base jurisdiction over his counterclaims upon "diversity of citizenship" under 28 U.S.C. § 1332.  *See, e.g.*, *Butler v. Sazerac Co. Fireball Mfr.*, No. 23-CV-7496, 2023 WL 8003329, at *4 (E.D.N.Y. Nov. 17, 2023) (concluding—after dismissing the only federal claim in the case—that the court lacked subject matter jurisdiction over any remaining state-law claims on the basis of its diversity jurisdiction where the plaintiff "ha[d] not only omitted his pre-incarceration place of citizenship [from his complaint], [but had also] wholly failed to allege the defendants' citizenship").

true for counterclaims arising under state law. *Galgano v. County of Putnam*, No. 16-CV-3572, 2024 WL 1623401, at *106 (S.D.N.Y. Apr. 15, 2024) (declining to exercise supplemental jurisdiction over state-law counterclaim after dismissing all federal claims); *Young v. Suffolk County*, 922 F. Supp. 2d 368, 397–98 (E.D.N.Y. 2013) (same).

Having declined to exercise supplemental jurisdiction over Defendant's state-law counterclaims, the Court denies Plaintiff's Motion for Summary Judgment on those counterclaims as moot. *See Sementes v. Quinn*, No. 21-CV-453, 2022 WL 2834607, at *8 (D. Conn. July 20, 2022) (denying as moot motions for summary judgment on certain state-law claims where the court granted summary judgment on the only federal claim in the case and declined to exercise supplemental jurisdiction over those state-law claims); *Holland v. Pinkerton Sec.*, 68 F. Supp. 2d 282, 284 (S.D.N.Y. 1999) (same).

## III.  Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied as moot.  The Clerk of Court is respectfully directed to terminate the pending Motions, (Dkt. Nos. 72, 76), enter judgment for Defendant, and close this case.

SO ORDERED.

Dated:    September 19, 2024
          White Plains, New York

_____
     KENNETH M. KARAS
   United States District Judge